UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOUTHERN CREDENTIALING SUPPORT SERVICES, LLC | CIVIL ACTION |
| VERSUS | NO: 15-7013 |
| HAMMOND SURGICAL HOSPITAL, LLC ET AL. | SECTION: "H"(1) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Southern Credentialing Support Services, LLC ("SCSS"), has alleged that Defendants Hammond Surgical Hospital, LLC d/b/a Cypress Pointe Surgical Hospital ("CPSH") and Hammond Surgical Hospital Management Co. LLC[1] infringed on its copyright through the unauthorized use, reproduction, and distribution of Plaintiff's healthcare credentialing form packets. This Court previously held that Plaintiff has valid copyrights in these packets as factual compilations and that it is entitled to judgment on its copyright claim. The Court noted that Defendants had verbatim copied 60 and 44 percent of Plaintiff's copyrighted works and published those works online.

---

[1] Defendant Christopher Beary was voluntarily dismissed by Plaintiff at trial.

1

Following these pre-trial rulings, this Court held a bench trial on March 20 and 21, 2018 on the issue of damages. Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## **FINDINGS OF FACT**

1. There are two copyrighted works at issue here (collectively, "the Packets")—the Louisiana Hospital Credentialing Process Packet (the "Initial Application Packet") and the Louisiana Hospital Re-Credentialing Process Packet (the "Re-Credentialing Packet"). Each Packet consists of forms, applications, delineations, and other documents designed to streamline the healthcare credentialing process.
2. This Court previously found that the Packets are each entitled to copyright protection of their selection, coordination, and arrangement as factual compilations. Doc. 149.
3. In October 2010, CPSH hired Plaintiff to provide healthcare credentialing services as an independent contractor, and Plaintiff began using the Packets in connection with its credentialing services.
4. Plaintiff ended the business relationship, and it terminated in May 2013.
5. Plaintiff registered the Initial Application Packet for copyright protection on February 26, 2014 and the Re-Credentialing Packet on July 25, 2014.

6. After the termination of the business relationship, CPSH hired LA Credentials, Inc. to conduct its credentialing services but continued to use portions of the Packets.
7. Defendants' infringing use of the Packets in its credentialing process began prior to the copyright registration of the Packets and continued thereafter.
8. Defendants first received notice from Debra Caminita, Plaintiff's owner, via email on July 28, 2014 that Plaintiff believed that Defendants' continued use of the Packets violated its copyrights.
9. Upon receipt of the aforementioned notice, the chairman of the board of CPSH forwarded Caminita's email and the credentialing forms then in use by the hospital to its general counsel and sought an opinion on Plaintiff's claim of copyright infringement.
10. Defendants' general counsel opined that the forms were not copyrightable, and Defendants therefore continued using the forms.
11. Caminita did not respond to requests to identify with specificity which documents she alleged were protected by copyright.
12. Plaintiff filed this suit alleging copyright infringement on December 23, 2015.
13. Defendants continued using and copying the Packets even after suit was filed.
14. Between January and August 2017, Defendants published 60 percent of the Initial Application Packet and 44 percent of the Re-Credentialing Packet on LA Credentials website. This Court has previously held that this constituted copying. Doc. 181.

15. At trial, Plaintiff sought only statutory damages for the Defendants' internet distribution of the Packets.
16. Defendants do not earn money for credentialing physicians.
17. Plaintiff never licensed or sold the Packets.
18. Plaintiff alleges that its actual damages are $112,775, the amount that it would have earned had it performed the credentialing work that used its Packets after it terminated the business relationship with CPSH. This is not an appropriate measure of Plaintiff's damages. First, the fee that Plaintiff charged Defendants to process a credentialing application included more than merely the use of the Packets. Second, Plaintiff terminated its business relationship with Defendants and therefore lost the opportunity to profit off its credentialing needs.
19. Plaintiff did not submit evidence of any lost profits related to Defendants' continued use of its Packets.
20. Plaintiff alleges Defendants' profits increased $68,050, the amount Defendants saved by contracting with LA Credentials to perform its credentialing instead of Plaintiff because LA Credentials charged lower rates. There is no evidence that LA Credentials charged lower rates because it was using Plaintiff's forms.
21. Plaintiff also failed to present evidence of Defendants' gross revenue.
22. Plaintiff has not to shown any actual damages suffered or an increase in Defendants' profits related to Defendants' continued use of its Packets.

# CONCLUSIONS OF LAW

**Statutory Damages**

1. "[N]o award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C.A. § 412. "Where a work is not registered until after the infringement, the copyright holder is not eligible for statutory damages and is limited to actual damages and profits under sec. 504(b) of the 1976 Act. Furthermore, where the alleged infringing activity commences prior to the registration of a copyright, the copyright claimant may not claim statutory damages for continued post-registration activity." *Mason v. Montgomery Data, Inc.*, 741 F. Supp. 1282, 1285 (S.D. Tex. 1990), *aff'd*, 967 F.2d 135 (5th Cir. 1992).

2. Plaintiff is not entitled to statutory damages for Defendants' continued use of portions of the Packets in its credentialing process.

3. "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504. Statutory damages may range between $750 and $30,000 per infringed work, or if the infringement is willful, the Court may increase the statutory damages up to $150,000 per infringement. *Id.* Accordingly, Plaintiff is entitled to present evidence at trial of its actual damages, of the additional profits of Defendants, and of Defendants' willfulness in infringing on its copyright.

4. "A 'new' or 'separate' basis for the award of statutory damages is created . . . where there is a difference between pre- and post-registration infringing activities." *Mason.*, 741 F. Supp. at 1285.
5. Defendants' internet distribution of the Packets is different in kind from their prior infringing acts of using the Packets in their credentialing process.
6. "Infringement is willful if the Defendant had knowledge that his conduct represented infringement or recklessly disregarded the possibility that his conduct might constitute infringement." *Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 578 (E.D. Tex. 2007).
7. Defendants' publication of the Packets to LA Credentials website was not willful given the fact that it was done at the advice of its general counsel and without full knowledge of which documents Plaintiff claimed copyright protection.
8. Plaintiff is entitled to statutory damages for Defendants' non-willful acts in posting both the Initial Application Packet and the Re-Credentialing Packet to LA Credentials website for an eight-month period.
9. "The district court is afforded almost exclusive discretion, between the minimum and maximum statutory limit, in determining the amount actually awarded." *Guillot-Vogt Assocs., Inc. v. Holly & Smith*, 848 F. Supp. 682, 691 (E.D. La. 1994); *see Broad. Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 488 (7th Cir. 1995). "Among the factors a court may consider in setting statutory damage amounts are: the expenses saved and profits reaped by the infringer, the deterrent effect of the award on defendant and on third parties, and the infringer's state

of mind in committing the infringement." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1176 (N.D. Tex. 1997).

10. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

11. Plaintiff failed to show actual damages or Defendants' increased profit.

12. In light of the fact that Defendant's infringement was not willful and Plaintiff has failed to show actual damages, this Court finds that a statutory damages award in the lower range of allowable awards is appropriate.

13. Plaintiff is entitled to a statutory damages award in the amount of $2,500 per infringement, or $5,000 total.

**Injunctive Relief**

14. A court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.

15. Plaintiff is entitled to a permanent injunction preventing Defendants from further infringing on its copyrights.

**Attorneys' Fees and Costs**

16. "Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).

17. Plaintiff is entitled to an award of reasonable attorneys' fees and costs for the work done in association with Defendants' infringing online publication.

## **CONCLUSION**

For the foregoing reasons, Plaintiff is entitled to a judgment in the amount of $5,000, reasonable attorneys' fees and costs, and a permanent injunction.

New Orleans, Louisiana this 9th day of October, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**